IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

J & J SPORTS PRODUCTION, INC.,      )
                                    )
                  Plaintiff,        )
                                    )
         v.                         )   C.A. No. 15-353 (MN)
                                    )
M&I HOSPITALITY OF DELAWARE         )
INC., IGOR RAMOS, MARTHA RIVERA     )
d/b/a MORELIA MEXICAN               )
RESTAURANT,                         )
                                    )
                  Defendants.       )

## MEMORANDUM OPINION

Charles J. Brown, III, GELLERT SCALI BUSENKELL & BROWN, LLC, Wilmington, DE – attorneys for Plaintiff

November 19, 2018
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE:

Before the Court is a Motion for Default Judgment (the "Motion") (D.I. 11) submitted by Plaintiff J & J Sports Production, Inc. (hereinafter "J&J" or "Plaintiff") against M&I Hospitality of Delaware ("M&I"), Igor Ramos ("Ramos"), and Martha Rivera ("Rivera") d/b/a Morelia Mexican Restaurant (collectively "Defendants") for the unlawful interception and exhibition of Plaintiff's program without a proper commercial license pursuant to claims of 47 USC § 605, 47 USC § 553, and for common law conversion. For the reasons below, the Court grants the Motion as to M&I, denies the Motion as to the individual Defendants Igor Ramos and Martha Rivera, and awards damages to Plaintiff in the amount of $2,752.

## I. BACKGROUND

Plaintiff is an international sports and entertainment distributor. (D.I. 12 at 1). In the Spring of 2013, Plaintiff contracted for the "exclusive nationwide television distribution rights to the *Floyd Mayweather, Jr. v. Robert Guerrero, WBS Welterweight Championship Fight Program* and its undercard bouts (the "Fight") taking place on May 4, 2013. (D.I. 1 at 2). Leading up to the Fight, J&J entered sublicensing agreements with commercial entities across North America, granting those entities limited commercial rights to show the Fight. (*Id.* at 3).

Almost two years after the Fight, on May 1, 2015, Plaintiff filed a Complaint for Damages (the "Complaint") against Defendants alleging that:

> [w]ith full knowledge that the [Fight] was not to be intercepted, received and exhibited by entities unauthorized to do so, defendants and/or their agents, servants, workmen or employees so did unlawfully publish, divulge and exhibit the Program at the time of its transmission at their addresses of their respective establishments, as indicated above. Said unauthorized interception, publication, exhibition and divulgence by defendants was done willfully and for purposes of direct or indirect commercial advantage or private financial gain.

(*Id.*). Plaintiff asserted three claims against the Defendants: violation of 47 U.S.C. § 605; violation of 47 U.S.C. § 553; and common law conversion. (*Id.* at 2-5). Following inaction from all parties,

1

the Honorable Gregory M. Sleet issued a Status Report Order on February 3, 2016, directing Plaintiff to "submit a status letter . . . no later than February 23, 2016." (D.I. 3). Plaintiff failed to comply. Thereafter, on March 14, 2016, Plaintiff submitted requests for default as to each of the Defendants. (D.I. 4, 5, 6). The Clerk entered default as to each of the Defendants the same day. (D.I. 7, 8, 9). More than two years later, on September 20, 2018, the case was reassigned to the undersigned. On October 2, 2018, the Court entered an Order to Show Cause for failure to prosecute. (D.I. 10). On October 10, 2018, nearly thirty-one (31) months after the entry of default, Plaintiff filed its Motion. (D.I. 11).

With its Motion, Plaintiff submitted an affidavit from its President[1], (*id.*, Exhibit A) (the "Gagliardi Affidavit"); its contract for the exclusive license to exhibit a live telecast of the Fight (*Id.*, Exhibit A-1); a "rate-card" for commercial sub-licenses (*Id.*, Exhibit A-2); and an affidavit from an investigator named Daniel Szlezak (*Id.*, Exhibit B) (the "Szlezak Affidavit"). The Szlezak Affidavit outlines the investigator's presence at Morelia Mexican Restaurant on the night of the Fight and indicates that he (1) paid a $6 cover charge to enter the establishment, (2) observed five televisions of various size placed around the room, and (3) watched a portion of an undercard fight playing on a television. (*Id.*, Exhibit B at 1). Szlezak states "I counted the number of patrons two (sic) separate times. The head counts were 85, 88, 92." (*Id.*).

On November 1, 2018, Plaintiff filed a response to the Order to Show Cause explaining its delay was because it "believed that a default judgment had been obtained once the default was entered." (D.I. 13 at 1).

---

[1] The Gagliardi Affidavit largely cites the allegations in the Szlezak Affidavit, and asks the Court to "grant the **maximum** allowance for statutory damages" in part because the violation occurred in the "major metropolitan area" of Newark, Delaware. (D.I. 12, Exhibit A at ¶13, 17 (emphasis original)).

II. **LEGAL STANDARDS**

Defaults and default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure. Under Rule 55(a), where defendant is properly served and has subsequently "failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Following the clerk's entry of default, where a claim is not for a sum certain[2], a plaintiff must "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). In the Third Circuit, there is a preference that, where possible, a case should be decided on its merits and not by default judgment. *Cananzaro v. Fischer*, 570 Fed. Appx. 162, 165 (3d Cir. 2014). When determining whether to grant a default judgment, the Court uses the three-part test set out by the Third Circuit in *Chamberlain v. Giampapa*, which requires a consideration of "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)). The Court takes the Complaint's well-plead facts as true, but damages must be proven by the Plaintiff. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir.1990).

III. **DISCUSSION**

    A. **Plaintiff is Entitled to Default Judgment Against M&I Hospitality of Delaware**

The Court will enter default judgment in favor of J&J and against M&I. This action has been pending for more than three years without any response from Defendants, and the Clerk has entered default. Moreover, the Court finds that the *Chamberlain* factors have been met. The

---

[2] "A claim is not a sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default." *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 19 (1st Cir, 2003). Here, where several alleged factors affect the computation of damages, the claim is not a sum certain.

3

uncontroverted evidence suggests that Defendant M&I showed the Fight without a commercial license and Plaintiff continues to be injured by an inability to recover its losses for this violation. It is not apparent that M&I has a litigable defense given its failure to respond to the action. Finally, where M&I has failed to respond to the Complaint, it can be inferred that the "delay is due to culpable conduct." *See Skeway v. China Natural Gas, Inc.*, Civ. A. No. 10-728 (RGA), 2015 WL 451435 at *1 (D. Del. Jan. 30, 2015).

The Court will deny the entry of default with respect to defendants Ramos and Rivera. Plaintiff's Complaint names Ramos and Rivera individually for their roles in "own[ing] and operat[ing] the bar and restaurant known as Morelia Mexican Restaurant." (D.I. 1 at ¶6). The Complaint and Motion for Default Judgment contain no further allegations against Ramos and Rivera. The failure to state a claim against these individuals presents a litigable defense for Ramos and Rivera. Courts have found that "individual liability under the Cable Act requires that the individual authorize the underlying violations." *J&J Sports Production, Inc. v. 291 Bar & Lounge*, LLC, 648 F. Supp. 2d 469, 473 (citing *J & J Sports Productions, Inc. v. Benson*, Civ. A. No. 06-1119, 2007 WL 951872, at *7 (E.D.N.Y. Mar. 27, 2007)). In *291 Bar & Lounge*, the Court noted that an individual defendant would not be found liable where "plaintiff has made no allegation that [the individual] was present for the violation, that he authorized or controlled it, or that he reaped commercial profit from it." *Id.* Moreover, that court emphasized that "[t]o the extent that J&J wishes to assert liability against an individual in the future, it should make adequately detailed allegations in the Complaint, beyond the conclusory and vague charge of mere ownership of the offending entity." *Id.* Despite that ruling in 2009, Plaintiff has failed to offer further detail in its allegations here. The Court finds it would be inappropriate to hold Ramos and Rivera jointly and severally liable alongside the business based on the allegations made. Additionally, whereas

default judgment is being entered against M&I, the Court finds no prejudice will result for Plaintiff by denying default judgment with respect to Ramos and Rivera.

**B.     Plaintiff is Entitled to $2,752 in Damages Under 47 U.S.C. § 553**

As a threshold matter, Plaintiff is only entitled to damages under § 553. J&J brought this action under 47 U.S.C. §§ 553 and 605. "Section 605 prohibits the unauthorized interception of satellite transmissions when the interception occurs outside of or before distribution of the service of a cable system," while "[s]ection 553 applies 'once a satellite transmission reaches a cable system's distribution phase.'" *See J & J Sports Production, Inc. v. 3rd Floor LLC*, C.A. No. 13-1896 (GMS) (D. Del. Aug. 29, 2017) ("*3rd Floor I*") (citing *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3d Cir. 2001)). In the Third Circuit, a plaintiff may seek relief under § 553 or § 605, but not both. *See TKR Cable*, 267 F.3d at 205-206. Plaintiff requests the Court provide relief under § 605, stating "[J&J] should not be prejudiced because it cannot isolate the precise means of signal transmission the Defendants used . . . ." (D.I. 12 at 3). Plaintiff provides no legal argument why § 605 is proper, but simply contends "it is inherently reasonable in this instance."[3] The Court disagrees. Recent decisions from courts in the Third Circuit indicate a presumption that § 553 applies over § 605 when a plaintiff has provided no evidence of a satellite violation. *See Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 289 (E.D. Pa. 2014) ("where a defendant has somehow intercepted a signal, but the means remain undiscovered – subterranean or up in the air – then, 'unlike § 605, a permissible inference can be drawn with respect to § 553.'"

---

[3]     In its brief, Plaintiff cited no cases from any court in the Third Circuit, despite numerous opinions on this issue in recent years.

5

(internal citations omitted))⁴. J&J has shown no evidence of a satellite violation by Defendant M&I and thus the Court will apply § 553. Plaintiff is entitled to damages thereunder.

    *i.*  *Statutory Damages Under Section 553*

Section 553 provides Plaintiff with an option to recover either actual or statutory damages. 47 U.S.C. § 553(c)(3)(A). J&J seeks statutory damages. Section 553 dictates "the party aggrieved may recover an award of statutory damages for all violations involved in the acting, in a sum of not less than $250 or more than $10,000 as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii). Plaintiff requests the Court award the statutory maximum of $10,000 citing "the need for significant deterrence." (D.I. 12 at 9)⁵. Courts, however, have found that statutory damages "'should be calculated based solely on an estimate of actual damages,' without considering deterrence." *See e.g. Yakubets*, 3 F. Supp. 3d at 275 (quoting *Charter Commc'ns Entm't I DST v. Burdulis*, 460 F.3d 168, 181-83 (1st Cir. 2006)). The Honorable Gene E. K. Pratter's lengthy consideration of deterrence with respect to statutory damages in *Yakubets* is persuasive, and the Court will estimate the actual damages rather than focus on deterrence.

The measurement of statutory damages must consider the cost defendant would have paid for a license and defendant's profits attributable to the violation. *Id.* at 279-80. Here, Plaintiff provided a "rate card," which indicates that commercial licenses for the Fight varied from $2,200 to $20,200. (D.I. 12, Exhibit A-2). For a venue of "minimum seating" up to 100 people, the cost of a sublicense would have been $2,200. (*Id.*). The Szlezak Affidavit notes that three separate

---

⁴ Last year in the Middle District of Pennsylvania, Plaintiff requested judgment solely under § 553 because it could not show evidence of a satellite violation. *See J&J Sports Production, Inc. v. Smalls*, Civ. A. No. 16-4883, 2017 WL 4680612 at *2 (M.D. Pa. Oct. 18, 2017) (citing Pl.'s Am. Br. at 3-4).

⁵ Both §§ 553 and 605 have statutory maximums of $10,000. Plaintiff incorrectly requested maximum damages under § 605, but the Court finds it appropriate to apply the Plaintiff's request for maximum damages to § 553.

head counts during his brief stay at the bar indicated attendance of 85, 88, and 92 people. (D.I. 12, Exhibit B). The Szlezak Affidavit does not indicate whether the individuals counted were sitting or standing. (*Id.*). Nor does it supply pictures of the restaurant on the night at issue – or at any time – to indicate that its seating capacity was more than 100 people. The Court need only accept well-plead facts and requires the Plaintiff prove its damage estimates. Plaintiff's submission of an estimated capacity, without more, does not meet the Plaintiff's burden. The Court awards $2,200 in damages based on the cost of a sublicense fee for a venue with seated capacity of 100 or fewer people.

Second, the Court can estimate profits by considering "(1) the size of the establishment; (2) the number of patrons at the establishment, taken, to the extent possible, as the number of patrons present because of the interception (to which evidence of advertising to attract customers may be relevant); (3) the number, size, and position of screens displaying the broadcast (a factor to be considered in conjunction with (1) and (2) as an indication of who might be there specifically to watch); (4) any cover charge levied because of the interception; (5) what additional money patrons spent because of the interception (i.e., the amounts spent by those who otherwise would not have come, plus any other premiums or greater spending by those who would have come anyway); and (6) any such other factors as may appear relevant before the court." *Yakubets*, 3 F. Supp. 3d at 280. The Court, however, "will necessarily have to exercise some discretion as to whether to award *any further damages at all*, for evidence of profits may be too speculative." *Id.* (emphasis added). The Court has been provided with no factual bases to estimate M&I's food and drink revenues from the night of the Fight, let alone the percentage thereof spurred on from showing the Fight. While other courts have engaged with theoretical calculations of revenue numbers, the Court finds that process wholly speculative and thereby unjust. The investigator,

7

however, provided uncontroverted evidence that he paid a $6 cover charge to enter the establishment, and counted a maximum of 92 people in attendance, the Court will award $552 in damages based on the cover charge profit. Altogether, the Court awards Plaintiff $2,752 in actual damages.

### ii. *Enhanced Damages Under Section 553*

Section 553(c)(3)(B) provides that where "the court finds that the violation was committed willfully and for the purposes of commercial advantage . . . the court in its discretion ***may*** increase the award of damages . . . by an amount of not more than $50,000." 47 U.S.C. § 553(c)(3)(B) (emphasis added). Plaintiff has requested enhanced damages. The Court, however, does not find that such damages are appropriate here. First, several courts in the Third Circuit have recently questioned the efficacy of imposing such damages on small businesses where multiplying damages "would cause extreme hardship . . . and would result in gross overcompensation of Plaintiff." *See Smalls*, 2017 WL 4680612, at *3; *J & J Sports Prods., Inc. v. Hackett*, Civ. A. No. 16-2725, 2017 WL 3912403, at *5 (E.D. Pa. Sept. 6, 2017). The Court finds this reasoning persuasive. In this case, the statutory damages of $2,752 are substantial and should alone be sufficient to deter M&I from future piracy violations.

Second, the Court does not find that enhanced damages are appropriate in consideration of Plaintiff's significant delays in the prosecution of this case. Plaintiff filed its Complaint on May 1, 2015. (D.I. 1). Thereafter, Plaintiff did nothing until the Court ordered the submission of a status report on February 3, 2016. (D.I. 3). Plaintiff failed to respond to the Court as ordered, but then later filed for (and obtained) entry of default against Defendants. (D.I. 4-9). For the ensuing thirty-one months, there was no movement in this case. On October 2, 2018, the Court ordered Plaintiff to show cause for failure to prosecute. (D.I. 10). On October 10, 2018, Plaintiff filed its

Motion with a supporting brief. (D.I. 11, 12). Though Plaintiff highlights the purported need for enhanced damages as a deterrent, that suggestion is undercut by its own actions. Surely, if this was of such importance, Plaintiff would have sought immediate relief. Instead, Plaintiff waited two years to sue, another 10 months to request default, and another two and a half years to request judgment – and only did so when the Court threatened to dismiss the case.

Finally, the Court questions Plaintiff's claim that it "believed that a default judgment had been obtained once the default was entered." (D.I. 13 at 1). Like Judge Pratter in the Eastern District of Pennsylvania, the Court understands that "[i]t is not uncommon for litigants (and even their lawyers) to fail to appreciate that there is a difference between 'default' governed by Federal Rule of Civil Procedure 55(a) and a 'default judgment' authorized by Rule 55(b). *Yakubets*, 3 F. Supp. 3d at 270 n.5. Plaintiff's history in this Court and around the country,[6] however, suggests a familiarity with Rule 55 and the difference between subsection (a) and subsection (b).[7]

The Court finds the statutory damages sufficient and the prosecution delay unacceptable. Thus, the Court will not exercise its discretion to provide Defendant with enhanced damages.

### iii. Costs and Attorneys' Fees

Section 553(c)(2)(C) provides "[t]he court may direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Such an award of costs

---

[6] A brief search of J&J on Westlaw indicates records of Plaintiff in at least 1,441 cases, 1,018 of which include the term "default judgment."

[7] The Court has identified at least five other cases initiated by Plaintiff in this district. *See 3rd Floor I*; *J&J Sports Production Inc. v. 3rd Floor LLC*, C.A. No. 14-511 (LPS) (D. Del. Mar. 29, 2018); *J&J Sports Production Inc. v. Morrison*, C.A. No. 14-713 (RGA) (D. Del. May 7, 2015); *J&J Sports Production Inc. v. Kim*, C.A. No. 14-1170 (LPS) (D. Del. March 29, 2016); *J&J Sports Production Inc. v. 3rd Floor LLC*, C.A. No. 14-1449 (LPS) (D. Del. Mar. 29, 2018). In two of those cases, the case was dismissed for failure to prosecute after obtaining default, and in two others, Plaintiff moved for entry of default judgment after obtaining default.

is entirely within the court's discretion. *Burdulis*, 460 F.3d at 170 n.2. Plaintiff's Complaint and the Gagliardi Affidavit request attorneys' fees (D.I. 1 at 6; D.I. 12., Exhibit A), but no additional argument has been presented. For the reasons discussed *supra* in section III.B.ii, the Court will not exercise its discretion to grant attorneys' fees and costs.

### C. Common Law Conversion

Count Three of the Complaint seeks compensatory and punitive damages for common law conversion (D.I. 1 at 5), alleging that from their "interception, exhibiting, publishing, and divulging the [Fight] . . . the [] defendants tortuously obtained possession of the Program and wrongfully converted it to its own use and benefit." *(Id.)*. Plaintiff cites a California statute regarding conversion as well as a single California state case to support its request for damages but has not explained why California law should apply in this case. In any event, this Court has previously found that recovery on a common law conversion claim would be duplicative where plaintiff already succeeded on a theory of unlawful interception and distribution. *See 3rd Floor I*, C.A. No.13-1896 (GMS) at *2. The Court will thus not grant Plaintiff's request for damages with respect to a claim for conversion.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Default Judgment (D.I. 11) is hereby granted as to Defendant M&I Hospitality of Delaware Inc. and denied as to the individual Defendants Igor Ramos and Martha Rivera. The Court awards damages to Plaintiff in the amount of $2,752 against M&I Hospitality of Delaware Inc. An appropriate Order will follow.